**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles L. Brown III | No. CV12-2003 PHX DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Clyde L. Reese III et al. | |
| Defendants. | |

Defendants Arizona Department of Economic Security ("Arizona DES"), Georgia Department of Human Services ("Georgia DHS"), Clarence H. Carter, Clyde L. Reese III, Melissa Waddell, and Linda Register have filed three separate motions to dismiss Plaintiff's complaint. Docs. 8, 9, 13. Defendant Nina Ware has not joined these motions, but has filed an answer. Doc. 12. The motions have been fully briefed and no party has requested oral argument. For the reasons set forth below, the Court will grant Defendants' motions.

**I.  Background.**

In California, Plaintiff met and conceived a child with Defendant Nina Ware. Doc. 1-1, ¶¶ 25, 26, 28.  The Santa Clara County Superior Court issued an order for the support and visitation of the child, declaring Nina Ware to be the custodial parent and Plaintiff the non-custodial parent. *Id.*, ¶¶ 29, 30, 31.  Nina Ware later moved to Georgia without approval of the Santa Clara court and without informing Plaintiff. *Id.*, ¶¶ 30, 31.

In 2002, Plaintiff visited the offices of Georgia DHS to notify them of a lost job and to request a modification of existing child support. *Id.*, ¶ 33. Plaintiff was also obtaining a doctoral degree from Arizona State University, which prevented him from working. *Id.*, ¶¶ 34, 35. A representative of Georgia DHS assured Plaintiff that a modification of the child support order would proceed within a month, but ultimately failed to take any action (*id.*, ¶ 37; Doc. 1-2), apparently because of confusion about whether Georgia or California had jurisdiction to modify the order (Doc. 1-1, ¶ 38).

On January 14, 2003, Arizona DES forwarded Plaintiff's request for child support modification to Defendant Melissa Waddell, an employee of Georgia DHS. *Id.*, ¶ 39; Doc. 1-3. Plaintiff alleges that Defendant Waddell "then failed [under Georgia law] to act on her administrative and legal duty to process" the request. Doc. 1-1, ¶ 40. Furthermore, at a meeting with Plaintiff, Defendant Waddell commented on Plaintiff's race and his pursuit of a doctoral degree by wondering "why you people seek advanced training." *Id.*, ¶ 73.[1] Not giving up, Plaintiff again submitted, with the help of Arizona DES, financial documents to Georgia DHS in 2004 to modify his child support order; Georgia DHS denies receiving these documents. *Id.*, ¶ 42; Docs. 1-4, 1-5. Shortly thereafter, Defendant Linda Register granted a request to give Georgia authority to modify the child support order. Doc. 1-1, ¶ 43. Georgia DHS obtained approximately $30,000 from Plaintiff's bank and retirement funds in the years 2004, 2006, and 2007. *Id.*, ¶¶ 43, 44. A Georgia Court also found Plaintiff guilty of child abandonment, apparently at the instigation of Defendant Nina Ware. *Id.*, ¶ 45.

On March 3, 2009, Plaintiff obtained a modification of his child support obligations from a Georgia court, although the court refused to correct the calculation of arrears due to Plaintiff's "lack of merit." *Id.*, ¶ 46. Finally, on December 22, 2011, Georgia DHS sent a letter to Plaintiff clarifying that in 2005 it decided not to modify

---

[1] In another part of the complaint, Plaintiff states that "Defendants" told him that "Niggaz had no need for a doctoral degree." Doc. 1-1, ¶ 90. It is unclear whether this is what Defendant Waddell actually said, or came from a separate meeting.

- 2 -

Plaintiff's child support order due to his failure to provide financial information. *Id.*, ¶ 47; Doc. 1-10. Georgia DHS and Arizona DES have also reported negative credit information to credit reporting agencies and Plaintiff's employer. Doc. 1-1, ¶ 50. Plaintiff has paid over $85,000 in child support to Nina Ware. *Id.*, ¶ 54. Plaintiff filed this complaint on September 20, 2012.

Plaintiff claims that Defendants discriminatorily denied his repeated requests to modify his child support order due to his race, age, and sex, thereby depriving him of constitutional rights and causing financial and emotional harm. While far from a model of clarity, the following charges can be gleaned from the complaint. Under 42 U.S.C. § 1983, Plaintiff claims that Defendants have violated his 14th Amendment equal protection and due process rights (Counts 1, 3, 4, 5). Under 42 U.S.C. § 1985, Plaintiff claims that Defendants conspired to interfere with his right to equal protection of the laws (Count 6). Under Title VI § 2000(d), Plaintiff claims that Defendants have excluded him from a federally funded aid program on the basis of race (Counts 2, 7). Finally, Plaintiff alleges defamation by "publishing false reports of arrears or unpaid child support to third party consumer credit bureaus" (Count 8). Plaintiff seeks a variety of remedies, including a declaratory judgment, a temporary restraining order, a preliminary and permanent injunction, and damages. *Id.*, ¶¶ A–D. Defendants raise numerous arguments in their motions to dismiss. Because the Court finds that Plaintiff has failed to state a claim against Defendants in Arizona, and that it lacks personal jurisdiction over Defendants in Georgia, the Court will not address the other arguments.

**II.   Discussion.**

   **A.   Failure to State a Claim.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and

therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

The complaint fails to allege any facts that would make Arizona DES or Carter liable.  Plaintiff's complaint provides no facts about Carter's actions.  The complaint alleges the following facts regarding Arizona DES: (1) it forwarded financial documents to Georgia DES; (2) it incorrectly stated to Plaintiff that his arrears matter had already been adjudicated; and (3) it helped Georgia garnish Plaintiff's wages and reported negative credit information.  None of these actions show that Arizona DES participated in the decision to deny Plaintiff's child support modification request.  At most, Arizona DES acted as an intermediary, forwarding documents given it by Plaintiff.  Plaintiff's complaint alleges that Georgia failed to modify his child support order, thereby resulting in a violation of his rights, but fails to allege any facts showing that the Arizona Defendants participated in Georgia's decision.  Plaintiff fails to assert a plausible claim for relief against Arizona DES and Carter.

**B.  Personal Jurisdiction.**

Plaintiff bears the burden of establishing personal jurisdiction.  *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  Because the Court is resolving the motion to dismiss without an evidentiary hearing, Plaintiff "need make only a prima facie showing of jurisdictional facts to withstand the motion." *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). That is, Plaintiff "need only demonstrate facts that if true

would support jurisdiction over [Defendants]." *Id.* at 1498; *see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1085 (9th Cir. 2000). In considering whether Plaintiff has satisfied this standard, the Court must apply Arizona's long-arm statute, which permits an exercise of personal jurisdiction to the maximum extent permitted by due process. Ariz. R. Civ. P. 4.2(a); *see Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 559 (9th Cir. 1995). Therefore, absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent), the Court must consider whether the nonresident defendants have sufficient minimum contacts with Arizona such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

If a defendant's contacts with Arizona are substantial, or continuous and systematic, the Court may assert general jurisdiction over the defendant even if Plaintiff's claims are unrelated to those activities. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986); *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446–47 (1952)). Alternatively, the Court may assert specific jurisdiction over a defendant if Plaintiff demonstrates that (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directed conduct at the forum that has effects in the forum, (2) the claims arise out of or result from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See Bancroft*, 223 F.3d at 1086; *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989). The parties agree that the test for specific jurisdiction applies to this case. Applying that test, the Court finds that Plaintiff has failed to show that an exercise of jurisdiction is reasonable.

**1.     Purposeful Availment.**

In discussing specific jurisdiction, the United States Supreme Court has emphasized that "it is essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). More recently, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (adopting "effects test" for libel, invasion of privacy, and intentional infliction of emotional distress claims where defendant's Florida conduct had "effects" in California, the forum state); *see Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("[T]he decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise of jurisdiction over a defendant whose only 'contact' with the forum is the 'purposeful direction' of a *foreign* act having *effect* in the forum state.'") (quoting *Haisten*, 784 F.2d at 1397) (emphasis in original).

Consistent with this precedent, the Ninth Circuit has held that a district court should apply different jurisdictional tests to contract and tort cases. *See Ziegler*, 64 F.3d at 473; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining whether court has specific jurisdiction over defendant, "[i]t is important to distinguish contract from tort actions"). In cases involving certain types of torts, the Ninth Circuit has held that courts should apply the "effects test" and that jurisdiction should attach if there is an (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendant should have anticipated would be suffered in the forum state. *Fiore v. Walden*, 688 F.3d 558, 576 (9th Cir. 2012); *Ziegler*, 64 F.3d at 474; *see Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (applying effects test to defamation, tortious interference with business relations, and intentional infliction of emotional distress claims); *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) (libel). A "section 1983 claim for deprivation of a constitutional right is more akin to a tort claim than a contract claim." *Ziegler*, 64 F.3d at 474 (9th Cir. 1995). As Plaintiff is primarily asserting deprivations of constitutional rights, including

claims under § 1983, this case is more akin to a tort case and therefore the effects test should apply.

In arguing for a finding of personal jurisdiction over the Georgia Defendants, Plaintiff emphasizes the following evidence: "liens against Plaintiffs [sic] Arizona bank accounts, use of Arizona Department of Economic Security – Division of Child Support Enforcement under false pretenses, Arizona state tax offsets, Defendant's claim against Plaintiff's personal injury award in Arizona." Doc. 18-2. Plaintiff also argues that by reporting his child support arrears to credit reporting agencies, Defendants had a negative impact on his credit rating in Arizona. In essence, Plaintiff argues that by using Arizona's legal and financial institutions to collect child support, Defendants have intentionally caused effects in Arizona sufficient to subject them to Arizona jurisdiction. Plaintiff does not claim Defendants have contacts with Arizona beyond miscellaneous communications.

Following the reasoning of *Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012), the Court concludes that the Georgia Defendants' actions can satisfy the effects test. In *Fiore*, DEA Agent Walden seized approximately $97,000 from two travelers in an airport in Atlanta, Georgia. *Id.* at 571. Walden believed the money came from drug transactions. *Id*. The travelers returned to their home in Nevada without the money, and sent documents to Walden showing that the money was legitimately earned from gambling. *Id.* at 571–72. Walden nevertheless filed an affidavit for forfeiture of the money, which was still being held in Georgia. *Id.* The Ninth Circuit found that a Nevada court could assert personal jurisdiction over Walden because he knew the travelers lived in Nevada and "individually targeted" them by filing an affidavit for forfeiture. *Id.* at 581–82. The court emphasized:

> [T]he difference between those cases in which harm is merely foreseeable in the forum [and insufficient for personal jurisdiction] and those in which conduct is "expressly aimed" at the forum is often the difference between an *intended* impact that is either local or undifferentiated, and an *intended*

> impact that is targeted at a known individual who has a substantial, ongoing connection to the forum.

*Id.* at 578.

In this case, the Georgia Defendants met with Plaintiff about his child support order and later communicated with him by letter. Plaintiff submitted financial documents to them as well. Plaintiff has made a plausible showing that the Georgia Defendants knew Plaintiff lived in Arizona. Furthermore, the Georgia Defendants failed to modify Plaintiff's child support order, which eventually led to liens on Plaintiff's accounts in Arizona. This also caused negative credit reports that negatively impacted Plaintiff in Arizona. Plaintiff has alleged sufficient facts to show that the Georgia Defendants intentionally targeted Plaintiff, knowing that he had a "substantial, ongoing connection to [Arizona]." *Id.* Defendants' alleged conduct is sufficient to satisfy the effects test and the purposeful availment requirement.

### 2. "Arising Out Of" Requirement.

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of a defendant's forum-related activities. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom*, 49 F.3d at 561. Defendants argue that Plaintiff's cause of action arises solely out of their failure to reduce Plaintiff's child support and that their collection of overdue payments from Arizona bank accounts is irrelevant for this jurisdictional analysis. The Court does not agree. Defendants' refusal to reduce child support payments enabled Georgia to collect overdue payments from Plaintiff's accounts, and, but for their collection of overdue payments, Plaintiff's cause of action would not have arisen.

### 3. "Reasonableness" Requirement.

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction

test are satisfied. *See Int'l Shoe Co.*, 326 U.S. at 316; *Ziegler*, 64 F.3d at 474-75. A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *See Ballard*, 65 F.3d at 1500. The burden of proof then shifts and the defendant must "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)); *see also Core-Vent Corp.*, 11 F.3d at 1495 (finding personal jurisdiction unreasonable even though "purposeful availment" and "arising out of" requirements were arguably satisfied).

The Ninth Circuit considers seven factors to determine whether the exercise of specific jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475 (citing *Terracom*, 49 F.3d at 561); *see also Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (listing several of the seven factors). None of these seven factors is dispositive; each must be weighed in the balance. *Terracom*, 49 F.3d at 561.

The first factor – the extent of the Georgia Defendants' purposeful interjection into the forum state – weighs slightly in favor of Plaintiff. "Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Core-Vent Corp.,* 11 F.3d at 1488 (brackets in original) (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1271 (9th Cir.1981)); *but see Roth*, 942 F.2d at 623 (degree of interjection analysis and purposeful availment inquiry redundant). The Georgia Defendants did no more than process liens on Plaintiff's Arizona bank account. Their actions were limited to

enforcing legal obligations under Georgia law and did not exceed the narrow scope of activities necessary to accomplish that objective. Their actions nonetheless caused effects in Arizona, and the Court therefore concludes that this factor weighs slightly in Plaintiff's favor.

The second factor – the burden on Defendants of litigating in Arizona – weighs strongly in favor of the Georgia Defendants. They are located more than 1,900 miles from Arizona, Plaintiff presents no evidence that they have ever visited this State, and the evidence related to their actions is likely to be located almost entirely in Georgia. Even where the litigation burdens are equal, this factor "tips in favor of the defendants because the law of personal jurisdiction is 'primarily concerned with the defendant's burden.'" *Ziegler*, 64 F.3d at 475 (quoting *Terracom*, 49 F.3d at 561).

The third factor – the extent of conflict with Georgia sovereignty – also weighs heavily in favor of the Georgia Defendants. Three are Georgia state officials and one is a Georgia state agency. The outcome of this case could have significant consequences for the enforcement of Georgia's child support laws. Moreover, should the Court exercise personal jurisdiction in this case, Georgia officials could be amenable to suit in any state where they seek to enforce a child support order. This factor weighs heavily against the Plaintiff.

The fourth factor – the forum state's interest in adjudicating the dispute – weighs in favor of Plaintiff. Arizona maintains a strong interest in providing an "effective means of redress for its residents who are tortuously injured." *Core-Vent Corp.*, 11 F.3d at 1489.

The fifth factor – the most efficient judicial resolution of the dispute – weighs in favor of the Georgia Defendants. While the parties have not identified where witnesses and evidence are likely to be located, a majority of the parties are located in Georgia and the official actions at issue in this case originated in and were managed from Georgia. This case primarily involves events occurring in Georgia, and the relevant evidence is most likely to be located there.

The sixth factor – the importance of the forum to Plaintiff's interest in convenient relief – weighs slightly in favor of Plaintiff. Litigating in Georgia would surely be inconvenient for an Arizona resident. Nonetheless, "neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff. . . . A mere preference on the part of the plaintiff for its home forum does not affect the balancing; indeed, this factor is insignificant in this case." *Id.* at 1490.

The final factor is the availability of an alternate forum, which weighs in favor of the Defendants. Plaintiff has proven his ability to travel to Georgia in order to deal with his child support order.

In summary, the second, third, fifth, and seventh factors weigh in favor of the Georgia Defendants, with the second and third weighing strongly in their favor, while the first and fourth factors weigh in favor of Plaintiff. The sixth factor is essentially a wash. Although claims that satisfy the first and second prongs of the personal jurisdiction test are presumptively reasonable, the presumption can be overcome by a compelling case that exercising jurisdiction would be unreasonable. *Ziegler*, 64 F.3d at 476. The Court finds this to be a compelling case. Not only have Defendants been sued for acting to enforce Georgia law, but there is also a grave potential of conflict with Georgia's sovereignty. Exercising personal jurisdiction over the Georgia Defendants in this case would be unreasonable. The Court therefore holds that it lacks personal jurisdiction over Defendants Georgia DHS, Clyde L. Reese III, Melissa Waddell, and Linda Register.

### C. Leave to Amend.

The Court must decide whether Plaintiff should be granted leave to amend his claims with respect to any Defendant. If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before final dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000). The Court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203

F.3d at 1131 n. 13.

The defect in the claims against the Georgia Defendants cannot be cured by amendment. The Court has concluded that exercising personal jurisdiction over them would be unreasonable, a problem that cannot be remedied by re-pleading.

The claims against Defendants Arizona DES and Carter have failed for lack of factual detail and arguably could be corrected by amendment. The Court therefore will grant Plaintiff leave to amend with respect to these Defendants only. The deadline for filing an amended complaint will be **March 1, 2013**.

Plaintiff must become familiar with and follow the Federal Rules of Civil Procedure and the Rules of the United States District Court for the District of Arizona ("Local Rules"). *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) (pro se litigants "should not be treated more favorably than parties with attorneys of record"). The Federal Rules of Civil Procedure are available at the following Internet website: http:// www.law.cornell.edu/rules/frcp/. A copy of the Court's Local Rules may be obtained from the Court's website.

For purposes of the amended complaint, Plaintiff is directed to Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) provides that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). These pleading requirements shall be set forth in separate and discrete paragraphs. The paragraphs must be numbered in consecutive order.

To survive dismissal under Rule 12(b)(6), the amended complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Plaintiff is warned that if he fails to file an amended complaint by the March 1, 2013 deadline, the original complaint may be stricken and the case dismissed. *See* Fed. R. Civ. P. 12(e). Plaintiff is further warned that if he fails to prosecute this action, or if he fails to comply with the rules or any Court order, the Court may dismiss the action with prejudice pursuant to Rule 41(b) of the Federal Rule of Civil Procedure. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).

**IT IS ORDERED:**

1. The motions to dismiss (Docs. 8, 9, 13) are **granted**.

2. Leave to amend is not granted with respect to Defendants Georgia Department of Human Services, Clyde L. Reese III, Melissa Waddell, and Linda Register, but is granted with respect to Defendants Arizona Department of Economic Security and Clarence H. Carter. Plaintiff shall file an amended complaint by **March 1, 2013**.

Dated this 11th day of February, 2013.

_____
David G. Campbell
United States District Judge